**ARBITRON COMPANY, Plaintiff,**

v.

**E.W. SCRIPPS, INC., and Memphis Publishing Company, Defendants.**

No. 82 Civ. 2321(MP).

United States District Court,
S.D. New York.

March 14, 1983.

Rogers, Hoge & Hills, New York City, for plaintiff; by W. Hubert Plummer, Lile H. Deinard, Harriet T. Reynolds, New York City, of counsel.

Debevoise & Plimpton, Baker & Hostetler, Cleveland, Ohio, for defendants; John G. Koeltl, Ronald J. Levine, New York City, Louis A. Colombo, Warren G. Goldenberg, Cleveland, Ohio, of counsel.

*Opinion*

MILTON POLLACK, District Judge:

The Arbitron Company has asserted claims for copyright infringement and related torts against E.W. Scripps and the Memphis Publishing Company. Arbitron claims that Memphis Publishing, a corporation that publishes two local newspapers in Memphis, Tennessee, obtained unauthorized access to Arbitron's information regarding estimates of radio and television audiences and that it used these estimates to prepare comparative advertising brochures that were distributed in the Memphis area.

Defendant Memphis Publishing has moved to dismiss the action on the grounds that there is no personal jurisdiction over it and that venue is improper. Defendant Scripps has moved to dismiss the claims against it claiming that it is in no way involved in the action.

*Jurisdiction over Memphis Publishing*

Plaintiff attempts to establish jurisdiction over Memphis Publishing ("MP") by relying on both CPLR §§ 301 and 302.

*Jurisdiction under CPLR § 301*

CPLR § 301 allows New York courts to obtain jurisdiction over an out-of-state defendant such as Memphis Publishing if the defendant is doing business in New York. It is irrelevant whether the claim arose in New York. In general, the defendant corporation must conduct activities with a fair measure of permanence and continuity in New York before it can be found to be doing business here. *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 115 N.E. 915 (1917). This basic test has been made somewhat more specific in cases where plaintiffs have attempted to gain jurisdiction over out-of-state defendants on the basis of acts of agents of the defendants in the state. Thus, the court in *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967), *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967), held that for jurisdiction to be based on an agent's activities, "this is the significant and pivotal factor—the Service [agent] does all the business which Hilton (U.K.) could do were it here by its own officials." The local agent's activities must be "widespread and energetic." *Id.* 281 N.Y.S.2d at 45, 227 N.E.2d at 854. In *Aquascutum of London v. American Champion,* 426 F.2d 205 (2d Cir.1970), the court held that "solicitation-plus" "some financial or commercial dealings in New York" "or the defendant's holding himself out as operating in New York, either personally or through an agent," could form the basis for personal jurisdiction. *Id.* at 212. However, it is not doing business here "when a foreign corporation's activities in New York in addition to soliciting orders amount to nothing more than paying persons to perform essentially mechanical tasks for it . . . ." *Id.*

One recent Southern District case has noted that before it is possible to use this "solicitation plus" test, the amount of solicitation must be substantial and carried on with a considerable measure of continuity and from a permanent locale. *Stark Carpet v. M-Geough Robinson, Inc.,* 481 F.Supp. 499 (S.D.N.Y.1980).

 While no one fact is determinative of the question of personal jurisdiction, courts do rely upon the presence of certain factors in their analyses. For example, the authority of the agent that solicits sales to confirm those sales is a factor supporting jurisdiction. *Miller v. Surf Properties,* 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958). Similarly, the functioning of the agent as a claims adjuster, *Meat Systems Corp. v. Ben Langel-Mol,* 410 F.Supp. 231 (S.D.N.Y.1976), and the assistance of the agent in the collection of debts and in customer relations and negotiations, *Carter-Wallace v. Ever-Dry Corp.,* 290 F.Supp. 735 (S.D.N.Y.1968), can help support a finding of jurisdiction.

*Summary of Memphis Publishing's New York Activities*

MP is a Delaware corporation with its principal place of business in Memphis, Tennessee, where it publishes two newspapers, the Commercial Appeal and the Press-Scimitar. There are only 24 out of 482,000 paid subscriptions to the Commercial Appeal in New York and no paid subscriptions to the Press-Scimitar. MP has no office, no telephone listing, no bank account and no property in New York. It does not perform any services in New York and does not pay New York taxes. It is not licensed to do business in New York and does not have an agent to accept service of process here. Further, except as specified below, it has no agent in New York.

Arbitron's principal effort to obtain jurisdiction over MP relies on MP's use of two New York agencies, Metro and Story, to solicit advertising. The type of advertising that these companies solicit is nationwide copy that companies such as Ford wish to place in many papers. The advertisers utilize agents such as Metro and Story so that they can place their ads in many national papers at one time.

Story is an independent advertising sales agency that attempts to procure national advertising for 33 newspapers, including those published by MP. In 1981, Story solicited $2.5 million worth of advertising for MP. This constituted 4.3% of MP's total advertising revenue and 2.59% of MP's total advertising lineage. Story solicits companies that it selects but uses rates set by MP. Formally, MP retains the right to review and reject all of the advertising solicited by Story. While Arbitron claims that this option has never been utilized, MP, by the Reply Affidavit of Williams, ¶ 5, shows that copy has been rejected by MP. Letters attached to Plaintiff's Memorandum of Law, Exhibit 3, suggest that Story assists MP in collecting delinquent accounts. In addition, Story is referred to as MP's national advertising representative in nationally distributed materials. MP employees visit Story and call upon advertisers with Story representatives occasionally.

In theory, MP is responsible for receiving all orders and billing the advertisers. Arbitron, however, claims that in practice Story representatives accept orders. In his Reply Affidavit, ¶ 3, Williams shows that 90% of the orders are received directly by MP and that Story is not able to assure acceptance by MP of the ads that it receives from advertisers. In addition, Williams shows that MP is responsible for all of the billing.

Metro also serves as an advertising solicitor for MP in New York. Metro is owned by the newspapers and magazines for which it solicits. MP's share of ownership is 1.8%. It receives from Metro a dividend payment in addition to the revenue from the ads solicited. Metro was the source of .04% of MP's total advertising lineage and 1.56% of MP's total advertising revenue in 1981. Arbitron claims that in 1981, $1.5 million in revenue was generated by Metro. MP shows that the correct figure is $915,000.

As with Story, MP retains the right to reject all advertisements. While Arbitron again claims that this option has never been exercised, Williams, by his Reply Affidavit, ¶ 5, shows the contrary. Metro selects the advertisers that it solicits, bills and collects the amount due and then forwards the amount owed to MP to them. At one point, MP's former advertising director served as a member of Metro's Sales Advisory Committee. .

There is also some dispute regarding how the rates that Metro uses are set. Arbitron claims that Metro uses its independent discretion in setting the rates, while MP shows that the rates are established by the member newspapers of Metro as a group or by MP itself.

Arbitron also claims that MP is doing business in New York as a result of its use of a computer service, Windsor Systems Development, that is located in New York. In 1981, MP spent over $43,000 for the use of these services. Arbitron also claims that MP uses the services of New York corporations to develop demographic readership reports and to print certain advertising inserts (although most of the actual printing takes place out of state).

*Contacts with New York are Inadequate to Establish Jurisdiction under CPLR § 301*

■ Even if all of the facts were taken as claimed by the plaintiff Arbitron, an inadequate showing of personal jurisdiction has been attempted. Neither Story nor Metro performs all of the activities that MP would undertake if it were in the state. They cannot definitively confirm advertising orders. The agencies cannot guarantee payment by MP for advertising that it forwards to them. Their role in billing and collecting is limited to providing assistance in collecting delinquent accounts. Essentially, their activities are those of a depositor and transmitter of funds and not those of one actively engaged in financial or commercial dealings. These mere mechanical tasks are inadequate "pluses" to the solicitation activity to establish jurisdiction over MP. Thus, even though the activities of Story and Metro may be adequate to satisfy the substantial solicitation requirement of *Stark Carpet, supra,* the activity undertaken by them is not of the quantity or character necessary to constitute the requisite jurisdictional "plus."

The two cases most closely resembling the present one have gone opposite ways. In *American Radio Assoc. v. A.S. Abell, Co.,* 58 Misc.2d 483, 296 N.Y.S.2d 21 (Sup.Ct. 1968), the court held that there was no jurisdiction over the publisher of an out-of-state newspaper in a libel action even though the paper sold copies in New York, received some revenue from New York advertisers, used solicitors in New York who collected fees and forwarded them to the newspaper, and used a New York company to syndicate the very column at issue in the suit.

On the other hand, Judge Cannella, in *Katz v. Evening News and KTVY,* 514 F.Supp. 423 (S.D.N.Y.1981), *appeal filed,* No. 82–7509, found jurisdiction over a television station largely based upon the activities of its advertising solicitors in New York. This case, however, is easily distinguishable from the present one. There, the agency had an active role in developing the marketing strategy of the defendant. The New York activity generated a substantial portion of the advertising revenue of the defendant. The agents had substantial influence in rate setting. Judge Cannella admitted that the case before him was a close one. *Id.* at 427. The fact that there were fewer contacts in the present case shows that jurisdiction is not present in this case.

■ Note that there is no indication that the use of New York agencies or other services should support a finding of jurisdiction. The mere fact that a defendant purchases goods or services from New York does not mean that it is doing business here. *See American Radio, supra* (use of services of New York syndicate does not confer CPLR § 301 jurisdiction).

The cases that plaintiff relies on to establish jurisdiction are all easily distinguishable. In *Houghton Mifflin Co. v. National Computer Systems, Inc.,* 378 F.Supp. 592 (S.D.N.Y.1974), Judge Knapp found personal jurisdiction over an out-of-state defendant where, in addition to solicitation activity in New York, an employee of the defendant installed and serviced a computer in New York that was leased from the defendant. The sale and servicing of a product in New York is plainly different from MP's purchase of New York companies' computer or printing services.

In *Meat Systems, supra,* Judge Knapp, in finding that personal jurisdiction was present, emphasized that an agent in the state was authorized to indicate that the defendant company was present in New York. The agent serviced complaints on orders that the defendant itself had solicited. There is no evidence that either Story or Metro handled complaints for MP on transactions made by MP.

In *Top Form Mills, Inc. v. Sociedad Nationale Ind.,* 428 F.Supp. 1237 (S.D.N.Y.1977), Judge Gagliardi found personal jurisdiction over a foreign common carrier whose local agent oversaw shipments until they were received by the customers in New York, handled complaints and schedule changes, and identified its activities as those of the defendant in New York. Story and Metro are not identified either by MP or by themselves as authorized to schedule or supervise advertising for MP. In addition, *Top Form Mills, supra,* involved a common carrier and the Second Circuit has suggested that it is proper to exercise personal jurisdiction over such defendants with only minimal possible contacts. *Aquascutum of London v. S.S. American Champion,* 426 F.2d 205, 211 (2d Cir.1970).

*Jurisdiction under CPLR § 302*

CPLR § 302(a)(3)(i), upon which plaintiff relies, provides for jurisdiction over a defendant who "commits a tortious act without the state causing injury to person or property within the state ... if [it] regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state."

Arbitron fails to establish jurisdiction based upon this test as the tort outside the state did not cause an injury within the state. In commercial tort situations the place of injury is usually where the "critical events associated with the dispute took place." *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 433 (2d Cir.1971). In addition, the mere fact that the plaintiff lost business while residing in New York is too indirect to link the injury to the state. *Fantis Food, Inc. v. Standard Importing Co.,* 49 N.Y.2d 317, 326–27, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122, 125–26 (1980).

The only tie that the alleged tort in the present action has with New York is that the plaintiff resides here and that plaintiff claims to have suffered financial loss or loss of good will. These are inadequate links. Both would have been suffered by the plaintiff, if indeed they did occur, wherever it resided. Further, if the plaintiff lost any business as a result of defendant's actions, such business was lost in Memphis. If the use of the report by MP was tortious without the payment to the plaintiff, this additional sale would have been made in Memphis. There is no evidence that the allegedly infringing reports were ever distributed here. They related to the Memphis market and were used to solicit business there. Thus, under no possible interpretation of events did the critical events occur in New York or can plaintiff claim to have lost business here. To hold to the contrary would allow courts to exercise jurisdiction over all out-of-state defendants provided that the plaintiff resides in New York and claims a loss of good will. No jurisdiction is present under CPLR § 302.

*The Motion Directed to the Court's Jurisdiction is Ripe for Decision*

When the motion to dismiss for lack of jurisdiction came on for hearing initially, plaintiff pleaded that its opportunity to obtain sufficient discovery in support of the claimed jurisdiction had not been exhausted. Plaintiff had been granted leave to conduct its discovery at a pretrial conference held on June 15, 1982. The motion to dismiss was originally returnable on December 17, 1982. Four depositions had been taken and hundreds of pages of documents had been produced. The details of the relationship of MP with Story and Metro had been well developed. However, plaintiff's counsel requested a further opportunity to gather relevant facts. The Court thereupon ordered further discovery, albeit the defendant contended that further examinations would merely be duplicative; those

have now been completed. Except for prolix, unpersuasive and illusory details, nothing of significant or material value on the issue to be decided has been added by the supplemental discovery to establish personal jurisdiction over MP herein. The only "presence" attributable to the defendant in New York consists of that of its solicitors and use of services of New York corporations. Its solicitors perform only mechanical tasks and no tasks not connected to solicitation. The use of services of a New York entity is not adequate to constitute doing business in New York.

Memphis is just not present in New York sufficiently to warrant bringing this basically Tennessee case and company here for adjudication. Memphis is not "doing business" in person or by agent nor has it committed any tort nor did it establish any contract or relationship with plaintiff in New York, and if there is indeed any merit to plaintiff's claims, not only justly and fairly should they be referred to and adjudicated in Tennessee, but there clearly is no personal jurisdiction over Memphis for the assertion of the claims in New York.

*The Claims Against Scripps*

The claims against Scripps are no longer in Court; the parties consented to a discontinuance without prejudice and the Court so ordered on the hearing.

*Conclusion*

In light of the foregoing, there is no personal jurisdiction of the Court over Memphis Publishing Company, and the complaint against it is dismissed, with costs, thereby terminating the entire action.

SO ORDERED.