**Suzanne B. NEE, Plaintiff,**

v.

**HHM FINANCIAL SERVICES, INC. and Stephan L. Schneider, Defendants.**

**No. 87 Civ. 2187 (MP).**

United States District Court, S.D. New York.

June 18, 1987.

Reaves & Yates by James A. Reaves, New York City, for plaintiff.

Levitt, Scott & Sternberg by Alan Scott, New York City, for defendants.

## OPINION

MILTON POLLACK, Senior District Judge.

This is a motion pursuant to Fed.R.Civ.P. 12(b)(2) for an order dismissing plaintiff's complaint for lack of personal jurisdiction over the defendants.

### Procedure

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir. 1981) (citations omitted).

The Court determines this motion on the basis of the affidavits and memoranda furnished by the parties, and the arguments of counsel.

"If the court chooses not to conduct a full-blown hearing on the motion, plaintiff need only make a prima facie showing of jurisdiction through its affidavits and supporting materials. Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party to defeat the motion." *Id.* at 904 (citations omitted).

"When a court decides a motion to dismiss for lack of personal jurisdiction on the basis on affidavits and pleadings alone, it must resolve all doubts raised by the papers in the light most favorable to plaintiff." *Interface Biomedical Laboratories v. Axiom Medical, Inc.,* 600 F.Supp. 731, 735 (E.D.N.Y.1985).

### Substantive Standard

The law of the forum state, here the New York Civil Practice Law and Rules (CPLR), determines whether personal jurisdiction is present. *See Arrowsmith v. United Press International,* 320 F.2d 219, 233 (2d Cir.1961).

Under CPLR 301, a court has jurisdiction over a non-resident defendant "doing business" in New York.

The New York "long-arm" statute, at CPLR 302(a), provides jurisdiction as to a cause of action arising from the acts of a non-domiciliary defendant who in person or through an agent:

"1. transacts any business within the state; or

2. commits a tortious act within the state ...; or

3. commits a tortious act without the state causing injury to person or property within the state ... if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce ..."

Long arm jurisdiction under CPLR 302(a)(1) "requires not only that the defendant 'transact business' within this state, but also that plaintiff's cause of action arise out of such transaction." *National Spinning Co. v. Talent Network, Inc.*, 481 F.Supp. 1243, 1245 (S.D.N.Y. 1979).

## Facts

Plaintiff Nee, a New York resident, seeks recovery of monies allegedly held on her behalf by defendants Schneider and HHM. She claims that defendants (1) breached a contract entered February 2, 1986, (2) breached a fiduciary duty to plaintiff, and (3) unlawfully converted money held for plaintiff's account.

Defendant Schneider is a Pennsylvania resident, a certified public accountant, member of a Pennsylvania Professional Partnership (GSA), vice-president of a Delaware Holding Corporation (IHG), and vice-president of defendant HHM, which provides certain investment services. HHM is a corporation organized under the laws of the Cayman Islands and authorized to do business in Pennsylvania.

Schneider and Nee became acquainted in New York in 1984. Schneider performed accounting services for Pineapple Fitness, a New York corporation in which Nee was a shareholder and officer from 1984 through February 1986. Pineapple ran a health club located at 599 Broadway in New York City. Schneider maintains that accounting services for Pineapple were supplied out of GSA's Philadelphia office.

■ Nee asserts that she frequently met with Schneider in New York in connection with Schneider's Pineapple accounting work, and that during these meetings Schneider solicited her to make investments in HHM, to make Schneider her financial adviser, and to recommend potential investors to Schneider. Schneider denies discussing HHM with Nee prior to February 1986. He terms her suggestions that he solicited her personal investment business or asked her to refer investment clients as "sheer nonsense." However, when a personal jurisdiction motion to dismiss is decided on affidavits and the pleadings, the court must resolve disputed facts in the light most favorable to plaintiff. *See Interface Biomedical Laboratories,* 600 F.Supp. at 735.

In February 1986 Nee sold her interest in Pineapple to IHG, which she claims was Schneider's "corporate alter ego," in exchange for $20,000 and a promissory note for $45,000 payable in three installments. The transaction was consummated in St. Thomas, Virgin Islands. Nee claims that at that time Schneider suggested that she allow him to invest the initial $20,000 on her behalf, and that she agreed. The $20,000 was invested in a Cayman Island certificate of deposit through HHM.

In March 1986 Schneider met with Nee at her New York apartment. They discussed additional investment recommendations. Plaintiff alleges that at the meeting Schneider asked her to sign a power of attorney appointing Schneider personally and HHM as her attorneys in fact to make certain investments on her behalf. Schneider persuaded her to invest an additional $10,987.00 in an account receivable

with a maturity date of August 17, 1987. Nee later executed the power of attorney and invested in the account receivable.

In August 1986 Nee telephoned Schneider in Philadelphia and requested that he send her the funds from the matured account receivable. On September 30, 1987 Schneider sent Nee $2,000 representing interest on the investment but never sent the $10,987 principal investment.

In October 1986 Schneider met again with Nee at her New York apartment. Allegedly, he recommended further investment of the $10,987.00. In response to Nee's request for return of the money, Schneider told her she must wait 2–3 months or incur a penalty. She agreed to wait. Nee claims this was a misrepresentation intended to induce her to allow Schneider to retain her funds until he "could fabricate an excuse to retain my funds permanently."

Schneider claims that he and plaintiff engaged in no further discussions regarding her relationship with HHM during the course of their New York meetings on unrelated business.

On January 9, 1987 Schneider advised Nee that he and HHM were refusing to return her funds because a third party (Pineapple) was asserting claims against Nee.

Nee demanded return of her funds in a letter dated February 27, 1987. Defendants refused.

## Discussion

### A. Are defendants "doing business" in New York so as to create personal jurisdiction under CPLR 301?

■ A defendant is amenable to personal jurisdiction under CPLR 301 on any cause of action if he is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of [his] presence in this jurisdiction." *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983) (citations omitted). "The non-domiciliary must be 'doing business' in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Id.* (citations omitted).

"[T]he mere solicitation of business" is not sufficient to find that a defendant is "doing business;" however, "[s]ubstantial solicitation plus 'very little more' ... will support such a finding." *Katz Agency, Inc. v. Evening News Association,* 514 F.Supp. 423, 427 (S.D.N.Y.1981) (citations omitted), *aff'd,* 705 F.2d 20 (2d Cir.1983). "[T]he requisite 'plus' may be satisfied by evidence of the defendant foreign corporation's 'financial or commercial dealings in New York, or the defendant's holding himself out as operating in New York.'" *Id.* (citations omitted).

The pleadings and affidavits before the Court at this time indicate that defendants Schneider and HHM are not "doing business" in New York.

Plaintiff has not presented facts sufficient to demonstrate that either defendant has a permanent or continuous business presence in New York. Aside from Schneider's accounting services for Pineapple, plaintiff does not allege any other New York business dealings by defendants.[1] Plaintiff does not dispute that Schneider's accounting services for Pineapple were performed outside New York. Plaintiff has not articulated substantial solicitation by defendants, merely occasional meetings with plaintiff at her New York apartment where she was solicited to invest in HHM by Schneider.

However, plaintiff claims that Schneider represented on several occasions that "he had numerous clients in New York City for whom he performed investment advisory and financial management services and that he met with these other clients on the occasions he was in New York to meet with me."

### B. Did defendants "transact business" in New York and does the cause of action arise from those transactions so as to create personal jurisdiction under CPLR 302(a)(1)?

■ A single transaction of business in New York, out of which the cause of ac-

---

1. Plaintiff requests that defendants' motion be denied without prejudice to afford an opportunity to take discovery regarding the extent of defendants' other New York contacts in the event the Court finds insufficient basis for long-arm jurisdiction.

tion accrues, may be sufficient for the assertion of long-arm jurisdiction under CPLR § 302(a)(1). *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 446, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75, *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). The "relevant inquiry is whether the defendant has performed 'purposeful acts' in New York 'in relation to the contract, albeit preliminarily or subsequent to its execution.'" *American Contract Designers, Inc. v. Cliffside, Inc.,* 458 F.Supp. 735, 739 (S.D.N.Y.1978), citing *Longines-Wittnauer,* 261 N.Y.S.2d at 18, 209 N.E.2d at 75.

A defendant has been found to "transact business" in New York where he or his agent was present in New York to negotiate a contract and it was "unlikely that the contract could have been negotiated otherwise than by such face-to-face meetings between the parties." *Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951, 956 (2d Cir.1967). "It does not matter whether the negotiations are preliminary, or whether the contract is executed in New York, or whether the performance is contemplated for New York." *Bastille Properties, Inc. v. Hometels of America, Inc.,* 476 F.Supp. 175, 177 (S.D.N.Y.1979).

"Preliminary negotiations in New York that are 'essential to the existence of the contract' provide sufficient contact to establish New York's personal jurisdiction over the non-domiciliary defendant." *Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. 1523, 1531 (S.D.N.Y.1985), citing *M.L. Byers, Inc. v. HRG Productions, Inc.,* 492 F.Supp. 827, 831 (S.D.N.Y.1980). "Meetings which are partially social in nature, as well as meetings which merely create the likelihood of a more solid business relationship are a sufficient basis for the exercise of in personam jurisdiction." *Round One Productions, Inc. v. Greg Page Enterprises, Inc.,* 566 F.Supp. 934, 937–38 (E.D.N.Y.1982).

In determining whether a defendant "transacts business" under CPLR 302(a)(1) a court may look to whether meetings in New York "appear to be important in defining the terms of the final contract and structuring the relationship among the parties." *Silverman v. Worsham Bros. Co., Inc.,* 595 F.Supp. 959, 961 (S.D.N.Y.1984). *See Interface Biomedical Laboratories,* 600 F.Supp. at 737 (finding plaintiff sufficiently alleged transaction of business in New York to withstand motion to dismiss for lack of personal jurisdiction.).

Plaintiff's complaint and affidavit establish that defendant Schneider transacted business in New York on his own behalf and as an agent for defendant HHM. *See Mayer,* 601 F.Supp. at 1530 (Agency provision of CPLR 302 has been given flexible, not strict construction.).

Plaintiff has set forth significant and sufficient "purposeful acts" in New York undertaken by defendant in relation to the contract both preliminary and subsequent to its execution. *See American Contract Designers,* 458 F.Supp. at 739, citing *Longines Wittnauer,* 261 N.Y.S.2d at 18, 209 N.E.2d at 75.

Although the February 1986 contract for performance of investment and financial services was entered outside New York, Schneider met frequently with Nee in New York prior to that date throughout 1984, 1985, and 1986. In the course of these New York meetings Schneider is alleged to have frequently solicited Nee to retain him as her personal financial adviser and to induce her to make investments through his company, HHM. The affidavits reveal that while in New York Schneider repeatedly asked Nee to recommend people to him who might be interested in his investment advice and financial services.

The affidavits establish that Schneider visited Nee at her New York apartment in March 1986 to discuss investment recommendations; he asked her to sign over to him and HHM her power of attorney to facilitate investments. They discussed her potential investment in a $10,987.00 account receivable, which she subsequently made. Recovery of that investment is sought in this action.

Schneider then travelled to New York in October 1986 and met with Nee to discuss further investment of the $10,987.00 ma-

tured account. Nee demanded return of the funds.

Schneider's New York discussions with Nee appear essential to the existence of the contract and the HHM investments; therefore, the discussions provide a valid basis for jurisdiction over the non-domiciliary defendant on the contract action. *See Mayer,* 601 F.Supp. at 1531. The Schneider-Nee meetings "create[d] the likelihood of a more solid business relationship" between plaintiff and defendants and constitute a transaction of business creating jurisdiction under CPLR 302(a)(1). *See Round One Productions,* 566 F.Supp. at 937–38. The New York contacts appear important in defining the terms of the final contract and structuring the parties' relationship. *See Silverman,* 595 F.Supp. at 961.

Plaintiff's contract and fiduciary based causes of action arise out of Schneider's New York transactions. The New York discussions and meetings were essential to the birth of the contract and fiduciary relationship that have allegedly been breached. The funds alleged to have been converted arise from and were tendered to Schneider as a result of his transaction of business in New York. The $10,987.00 investment which Nee seeks recovery here is apparently a direct result of Schneider's March 1986 discussions with Nee in New York.[2] Therefore, the court has jurisdiction over plaintiff's third claim.

Based on the record developed thus far, the New York meetings provide a basis for concluding that jurisdiction is present based on defendants transactions of business in New York. Of course, subsequent evidence at trial may later require a reexamination of this conclusion.

It appearing that defendants have transacted business in New York, that plaintiff's claims arise from such transactions, and that jurisdiction under CPLR 302(a)(1) is well-founded, the Court need not reach the question of whether defendants are amenable to jurisdiction under CPLR 302(a)(2) or 302(a)(3).

*C. Is defendant Schneider protected from jurisdiction by the "corporate shield" doctrine?*

Schneider should not be shielded from jurisdiction by the "corporate shield" doctrine. This equitable doctrine provides that "if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of the contact." *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir.1981).

"The underpinning of this fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are performed not for his own benefits but for the benefit of his employer." *Id.*

Plaintiff's allegation is that Schneider held himself out personally to plaintiff as a financial adviser for his own benefit. He solicited plaintiff's investments in his personal behalf. Plaintiff understood at all times that she was contracting and dealing with Schneider personally in depositing funds and receiving investment and financial advice, and that HHM was merely a vehicle through which Schneider made certain investments on behalf of his clients.

"If the corporation is a mere shell for its owner, the employee-owner's actions may be viewed as having been taken in his own interests," and the fiduciary shield will not block jurisdiction. *Marine Midland,* 664 F.2d at 903. Schneider represented himself as personally responsible and obligated to plaintiff; he may not erect a barrier to jurisdiction based on the equitable shield doctrine.

Schneider's January 9, 1987 letter to Nee is signed by him as "Managing Partner" of HHM, obviating any application of the corporate fiduciary shield.

**2.** "The court must 'determine the issue of personal jurisdiction separately for each cause of action asserted in [the plaintiff's] complaint.'" *Interface Biomedical Laboratories,* 600 F.Supp. at 734, quoting in part *Sterling Television Presentations, Inc. v. Shintron Co.,* 454 F.Supp. 183 (S.D.N.Y.1978).

*Conclusion*

The New York meetings between Schneider and Nee provide a basis for this Court to exercise personal jurisdiction over the defendants at this time on plaintiff's first, second, and third causes of action. The Court is not deprived of jurisdiction over defendant Schneider under the equitable shield doctrine. Defendant's motion pursuant to Fed.R.Civ.P. 12(b)(2) is denied.