724 F.Supp. 180 (1989)
HVIDE MARINE INTERNATIONAL, INC., Hvide Shipping Incorporated and Seabulk Transmarine II, Inc., Plaintiffs,
v.
EMPLOYERS INSURANCE OF WAUSAU, Individually and as Representative of Those Certain Underwriters Subscribing to Certificate No. 14880 and Certificate No. 14482, London & Hull Maritime Insurance Co. Ltd., Sedgwick Marine Ltd., Fred S. James & Co., Inc. and Fred S. James & Co. of New York, Inc., Defendants.
No. 88 CIV 1523 (LBS).
United States District Court, S.D. New York.
October 27, 1989.
*181 Hill, Betts & Nash, New York City, John F. Keating, Jr., John J. Tomaselli, of counsel, for plaintiffs.
Cleary, Gottlieb, Steen & Hamilton, Sedgwick Marine Ltd., New York City, George Weisz, Jill E. Fisch, of counsel, for defendants.

OPINION
SAND, District Judge.
Plaintiffs Hvide Marine International, Inc., Hvide Shipping Incorporated and Seabulk Transmarine II, Inc. (collectively "Hvide") seek reimbursement for attorneys fees they incurred while defending a separate lawsuit in Louisiana concerning the sinking of a ship, the Oxy Producer. The Oxy Producer, a catamaran integrated tugbarge, was designed by J.J. Henry Company, *182 Inc. and built by Avondale Shipyards, Inc. to specification for Occidental Petroleum. Hvide both supervised the construction of the vessel and employed the crew which was operating the vessel when it sank. The Oxy Producer was insured under certain hull policies for loss or damage to the hull and machinery with respect to covered perils, including the negligent operation and management of the vessel by the crew.
Sedgwick Group plc, a subsidiary of Transamerica Corporation, is an international insurance broker with over 250 subsidiaries with offices worldwide. Sedgwick Marine, Ltd. ("Sedgwick Marine"), an indirect wholly owned subsidiary of Sedgwick Group plc, is a Lloyd's registered British insurance broker engaged in the business of broking international retail marine insurance outside North America. Its clients are primarily large multinational marine and oil companies. Fred S. James & Co., Inc. and Fred S. James & Co. of New York, Inc., other subsidiaries of Sedgwick Group plc, are retail insurance brokers which operate in North America. The Hvide business was initially solicited by the Fred S. James network of related companies, which later referred a portion of the business to its sister subsidiary Sedgwick Marine. Ultimately, Sedgwick Marine placed all the increased value insurance and 72 percent of the hull and machinery risk with the London underwriters, and the balance was underwritten by the American underwriters, including Employers Insurance of Wausau.
On September 20, 1981, the Oxy Producer sank in heavy weather off of the Azores. After the numerous insurance underwriters compensated the owners of the ship for the loss in February 1982, the insurance underwriters as subrogees brought suit in Louisiana against the builder of the ship, the architect and designer of the ship, and Hvide. In that suit, Hvide's co-defendants asserted cross-claims against Hvide, alleging that the loss was caused by Hvide's negligence in the management and operation of the Oxy Producer. Hvide defended itself against the cross-claim, and the trial court dismissed that claim. On March 4, 1988, Hvide filed a complaint in the Southern District of New York claiming that it is entitled to reimbursement for the costs it incurred as a defendant in the Louisiana lawsuit.
Defendants London Market Underwriters,[1] Fred S. James & Co., Inc., Fred S. James & Co. of New York, Inc., and Sedgwick Marine have filed separate motions to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Those motions are currently sub judice. In this opinion, this Court considers Sedgwick Marine's motion to dismiss the amended complaint under Fed.R.Civ.P. 12(b)(2), for lack of personal jurisdiction. After oral argument on July 14, 1988 on Sedgwick Marine's original Rule 12(b)(2) motion, this Court granted plaintiffs leave to conduct jurisdictional discovery. At the conclusion of plaintiffs' discovery almost one year later, defendant Sedgwick Marine renewed its motion under Rule 12(b)(2). Based on the oral argument on August 9, 1989 and the supplemental materials submitted in connection with that proceeding, this Court grants Sedgwick Marine's motion to dismiss for lack of personal jurisdiction.
The burden of ultimately establishing personal jurisdiction over a defendant is upon the plaintiff. Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir.1981). If the jurisdictional issue is decided initially on the pleadings before discovery, the plaintiff must only provide evidence of a prima facie case for jurisdiction. On the other hand, if the plaintiffs are given the opportunity to conduct jurisdictional discovery, the stricter preponderance of the evidence standard applies. Volkswagenwerk Aktiengesellschaft v. Beech Aircraft, 751 F.2d 117, 120 (2d Cir.1984). Despite plaintiffs' arguments to the contrary,[2] *183 this Court finds that plaintiffs have been afforded adequate opportunities for discovery relevant to the jurisdictional issue. Consequently, the burden of proof by a preponderance of the evidence rests in this case with the plaintiffs.
Personal jurisdiction in a diversity case is determined by the law of the state in which the district court sits. Arrowsmith v. United Press Int'l, 320 F.2d 219 (2d Cir. 1963). Hvide presents three arguments to support its assertion of jurisdiction under New York Civil Practice Law and Rules ("CPLR") §§ 301 and 302. First, Hvide argues that the trip to New York by Anthony Stephens, a Sedgwick Marine employee, satisfies the transaction of business requirement of New York's CPLR § 302(a)(1). Second, CPLR § 301 permits the assertion of jurisdiction over defendants who are "doing business" generally in New York, and Hvide asserts that Sedgwick Marine is doing business in New York directly and through its agents. Third, Hvide argues that even if Sedgwick Marine is not doing business in New York, jurisdiction is nonetheless proper since Sedgwick Marine's sister subsidiaries do business in New York and the close relationships among the numerous Sedgwick subsidiaries permit a court to pierce the corporate veil for jurisdictional purposes. This Court rejects each of these three arguments.
First, Hvide argues that this Court can assert personal jurisdiction over Sedgwick Marine under CPLR § 302(a)(1) which provides that "[a] court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state...." The application of section 302(a) is a "two-step test ... requiring not only that defendant `transact business' in New York, but also that the cause of action `arise' from the in-state transaction." Central Gulf Lines, Inc. v. Cooper/T Smith, Stevedoring, 664 F.Supp. 127, 131 (S.D.N. Y.1987). That second step requires that "there must be a `substantial relationship' between those [in-state] activities and the transaction out of which the cause of action arose." Alexander & Alexander, Inc. v. Donald F. Muldoon & Co., 685 F.Supp. 346 (S.D.N.Y.1988) (quoting McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981)). New York law requires "some `purposeful activities' within the State" and "the existence of an articulable nexus between the business transacted and the cause of action sued upon." McGowan v. Smith, 52 N.Y.2d at 271, 272, 437 N.Y.S.2d at 644, 645, 419 N.E.2d at 322, 323.
Therefore, the issue presented is whether the single visit to New York on September 29, 1981 by Mr. Anthony Stephens, the director in charge of Sedgwick Marine's claims department, relates to the substantive causes of action asserted against Sedgwick Marine. Hvide argues that their claims arise out of a breach of a single contract which required Sedgwick Marine, the retail insurance broker, both to place the hull insurance policies in the worldwide insurance market and to assist its client, Hvide, with any collections on losses incurred in the future. Although it is undisputed that this contract was negotiated in England and the alleged breaches occurred in England, Hvide asserts that the single visit to New York constitutes performance of the original contract and permits the assertion of jurisdiction for all causes of action relating to that contract.
Even if we agree with Hvide that its contract with Sedgwick Marine required Sedgwick Marine as broker to assist in the processing of claims long after the insurance policies had been placed and the commissions *184 earned, the New York contact in this case does not satisfy the "substantial relationship" standard. The contract in this case does not on its face contemplate performance in New York; assistance with claims for future losses could ultimately take place in any location. The only New York contact here is the September 29th meeting which was convened by an American broker after the loss occurred to discuss future claims processing and procedures to be followed in dealing with the underwriters. In Hvide's Amended Complaint, counts two, three and four allege failure by the brokers to procure proper insurance for the Oxy vessels, and count nine alleges failure to obtain reimbursement of Hvide's legal expenses from the various underwriters. There is not a sufficient nexus between the single, incidental and unanticipated meeting in New York concerning the processing of claims and Hvide's causes of action based on Sedgwick Marine's role in broking the insurance policies.
In McKee Electric Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), a suit for breach of a distributorship contract, the New York Court of Appeals held that a brief meeting by two high level employees of the defendant who came to New York to help ease frictions between the plaintiff and plaintiff's customers does not satisfy the jurisdictional requirements of CPLR § 302(a)(1). See also Mayes v. Leipziger, 674 F.2d 178 (2d Cir.1982) (no purposeful activity); Alexander & Alexander v. Donald F. Muldoon & Co., 685 F.Supp. 346 (S.D.N.Y.1988) (claims do not arise out of New York contacts); Faherty v. Fender, 572 F.Supp. 142 (S.D.N.Y.1983) (claims do not arise out of New York meetings); Xedit Corp. v. Harvel Industries Corp., 456 F.Supp. 725 (S.D. N.Y.1978) (New York activities not substantially proximate to allegedly unlawful acts).
Hvide cites several cases which have held that "a single, brief visit to New York may amount to `transaction of business' upon which jurisdiction can be based." American Contract Designers, Inc. v. Cliffside, Inc., 458 F.Supp. 735, 739 (S.D.N.Y.1978). In those cases, either the contract was negotiated in New York, the alleged breach occurred in New York, or the performance in New York was directly related to the underlying contract. See Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55 (2nd Cir.1985) (negotiation of franchise agreement in New York and numerous trips to New York on franchise business); Hedlund v. Products From Sweden, Inc., 698 F.Supp. 1087 (S.D.N.Y.1988) (contract negotiations in New York); Nee v. HHM Financial Services, Inc., 661 F.Supp. 1180, 1183-85 (S.D.N.Y.1987) (contract negotiations in New York); American Contract Designers v. Cliffside, Inc., 458 F.Supp. 735 (S.D. N.Y.1978) (trip to New York to further contract on which suit is based); George Reiner & Co., Inc. v. Schwartz, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 846, 363 N.E.2d 551, 552 (1977) (suit on employment agreement negotiated and executed in New York). Performance of an incidental contractual obligation by chance in New York will not satisfy the "substantial relationship" requirement of CPLR § 302(a)(1). Sedgwick Marine did not in any way purposefully avail itself of the privileges of conducting activities within the forum state. See Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)).
Hvide also argues that the trip to New York by James Kemp on December 21, 1981 constitutes a second related contact. However, Hvide provides no evidence to refute Sedgwick Marine's assertion that Mr. Kemp was acting as a lawyer for the underwriters, not as an agent of Sedgwick Marine.
Second, jurisdiction exists under CPLR § 301 if a foreign corporation is "engaged in such a continuous and systematic course of `doing business' here as to warrant a finding of its `presence' in this jurisdiction." Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 536, 281 N.Y. S.2d 41, 43, 227 N.E.2d 851, 853 (1967). The statute requires that the non-domiciliary *185 be doing business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917).
None of the classic indicia for "doing business" jurisdiction exist in this case. It is undisputed that Sedgwick Marine has no office, no employees, no real estate, no bank account, and no phone number in New York. Hvide argues that Sedgwick Marine does business in New York since it "utilizes the services of various New York brokers to place risks on behalf of non-New York clients into the New York market." Plaintiffs' Supplemental Memorandum of Law in Opposition to Sedgwick Marine's Motion to Dismiss at 13. Hvide argues that these New York brokers are either agents of Sedgwick Marine or independent contractors with sufficient authority to permit the exercise of personal jurisdiction over the principal, Sedgwick Marine. Plaintiffs' Supplemental Memorandum at 13-14. See Cutco Industries v. Naughton, 806 F.2d 361, 366 (2d Cir.1986).
It is clear that solicitation of business in New York without more will not subject a nonresident corporation to personal jurisdiction. See Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 211-212 (2d Cir.1970); New World Capital Corp v. Poole Truck Line, Inc., 612 F.Supp. 166 (S.D.N.Y.1985); Stark Carpet Corp. v. M-Geough Robinson, Inc. 481 F.Supp. 499, 506 (S.D.N.Y.1980). Sedgwick Marine admits that it has business relations with numerous international insurance brokers and underwriters, many of which, directly or indirectly, do business in New York. However, those contacts simply indicate the existence of business relationships with New York entities, not a jurisdictional presence in New York. See Insurance Co. of State of Penn. v. Centaur Ins. Co., 590 F.Supp. 1187, 1188-1189 (S.D.N.Y.1984); Birmingham Fire Ins. Co. v. KOA Fire & Marine Ins., 572 F.Supp. 962, 965-67 (S.D.N.Y.1983). Moreover, Hvide has not shown that those New York companies have any authority to act on behalf of Sedgwick Marine. At most, Sedgwick Marine makes occasional and isolated business contacts with New York and has ongoing business relationships with New York insurance brokers and underwriters. As a matter of law, therefore, Sedgwick Marine is not "doing business" in New York within the meaning of CPLR § 302.
Hvide also argues that under the test in Frummer v. Hilton Hotels Int'l Inc., Sedgwick International Marketing Services ("SIMS"), a sister subsidiary of Sedgwick Marine, acts as Sedgwick Marine's agent. Frummer permits the exercise of personal jurisdiction over a foreign party under CPLR § 301 when a New York agent "does all the business which [the foreign entity] could do were it here by its own officials." Frummer, 19 N.Y.2d at 537, 281 N.Y.S.2d at 44, 227 N.E.2d at 854. While Hvide has shown that SIMS placed nominal business on behalf of Sedgwick Marine, those activities do not meet the Frummer test.
Third, New York courts have asserted personal jurisdiction under CPLR § 301 over parent corporations, which do not directly do business in New York, but exercise sufficient control over New York subsidiaries. Since the subsidiary is a "mere department" of its parent, New York courts pierce the corporate veil for jurisdictional purposes and subject the foreign corporation to in personam jurisdiction. See Public Administrator v. Royal Bank of Canada, 19 N.Y.2d 127, 278 N.Y.S.2d 378, 224 N.E.2d 877 (1967); Taca Int'l Airlines v. Rolls-Royce, 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965).
It becomes clear from the many cases applying this "mere department" rule that the decision is essentially factual and requires a court to draw a line between truly separate corporations and subsidiaries which are not functionally independent. Compare Jayne v. Royal Jordanian Airlines Corp., 502 F.Supp. 848 (S.D.N.Y. 1980) (mere department because of "the easy interchange between the two companies in financial, promotional, and operational matters"); Ionescu v. E.F. Hutton & Co., 434 F.Supp. 80 (S.D.N.Y.1977) (mere *186 department); Tokyo Boeki (U.S.A.), Inc. v. SS Navarino, 324 F.Supp. 361 (S.D.N.Y. 1971) (mere department) with H. Heller & Co., Inc. v. Novacor Chemicals, No. 88-0340 (S.D.N.Y. Oct. 25, 1989) (LEXIS) (not mere department); Larball Publishing Co. v. CBS, Inc., 664 F.Supp. 704 (S.D.N.Y. 1987) (not mere department); Morse Typewriter v. Samanda Office Communications, 629 F.Supp. 1150 (S.D.N.Y.1986) (no jurisdiction since subsidiary "exercises substantial discretion and independence within broad parameters established by its parent"); Bulova Watch Co., Inc. v. K. Hattori & Co., Ltd., 508 F.Supp. 1322 (E.D.N.Y. 1981) (extensive analysis concluding no jurisdiction); Bellomo v. Pennsylvania Life Co., 488 F.Supp. 744 (S.D.N.Y.1980) (not mere department); Saraceno v. S.C. Johnson & Son, Inc., 83 F.R.D. 65 (S.D.N.Y. 1979) (no jurisdiction since parent only makes broad policy decisions); Delagi v. Volkswagenwerk AG of Wolfsburg, 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972) (not mere department). While a parent corporation will rightfully decide the broad policy objectives for its subsidiaries, excessive involvement in the day-to-day operations of a subsidiary can indicate that the alleged independence is only formal.
In this case, Hvide argues for a new and broad application of the "mere department" doctrine. The precedents cited to the court all involve the assertion of jurisdiction over a foreign corporation based on a parent-subsidiary relationship. Hvide here argues for the extension of that doctrine to the triangular set of relationships between two sister subsidiaries and a common parent. Hvide contends that even assuming arguendo that Sedgwick Marine does not itself do business in New York, since Sedgwick Marine's sister subsidiary SIMS does business in New York and since both Sedgwick Marine and SIMS are "mere departments" of their common parent, Sedgwick Group plc, the jurisdictional contacts of SIMS can be properly attributed to Sedgwick Marine. Hvide then continues to argue that under the Beech Aircraft factors, both Sedgwick Marine and SIMS are part of a single corporate network.
SIMS, a wholly owned subsidiary of Sedgwick Group plc, is a wholesale nonmarine insurance broker organized under the laws of the state of Delaware, and its sole place of business is in New York. Sedgwick Marine, another wholly owned subsidiary of Sedgwick Group plc, is a Lloyd's registered British insurance broker engaged in the business of broking international retail marine insurance outside of North America. Sedgwick Marine does not dispute that a New York court could properly assert personal jurisdiction over SIMS. It does however dispute both the factual conclusion that Sedgwick Marine and SIMS are "mere departments" and Hvide's application of that legal theory to sister subsidiaries. As to the extension of the "mere department" doctrine to sister subsidiary relationships, Sedgwick Marine first argues that such triangular attribution of jurisdictional contacts would be an unprecedented and dramatic extension of jurisdictional power over multinational corporations. Second, it contends that even if such triangular attribution is permissible, Hvide must show not only a close relationship between each sister-subsidiary and the common parent, but also excessive contacts between the two sister subsidiaries.
Since Hvide has not provided sufficient factual evidence to indicate that Sedgwick Marine is a "mere department" of Sedgwick Group plc, this Court does not have to decide whether such triangular attribution of contacts is appropriate. Without that leg of the triangle, there can not be personal jurisdiction over Sedgwick Marine.
In Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117 (2d Cir.1984), the Second Circuit set forth four factors to guide the determination of whether personal jurisdiction exists under the "mere department" theory. There is no dispute over the satisfaction of the first Beech Aircraft factor, common ownership. The cases make clear, however, that common ownership is only a necessary, but not a sufficient condition for "mere department" status. See H. Heller & Co., Inc. v. Novacor Chemicals Ltd., No. 88-0340 *187 (S.D.N.Y. Oct. 25, 1988) (LEXIS); Bellomo v. Pennsylvania Life Co., 488 F.Supp. 744 (S.D.N.Y.1980).
As to financial dependency, the second Beech Aircraft factor, Hvide has not shown that "[Sedgwick Marine] is wholly dependent upon [Sedgwick Group plc's] financial support to stay in business." Beech Aircraft, 751 F.2d at 121. To support that assertion, Hvide marshalls evidence that indicates that the sister subsidiaries do not always deal with each other on an arm's length basis. That evidence of preferential treatment, however, relates more directly to the fourth Beech Aircraft factor, "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent."
The third Beech Aircraft factor is "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities." Beech Aircraft, 751 F.2d at 121. While Hvide provides evidence of interlocking directorates among many related Sedgwick companies, it does not assert that any of the directors of Sedgwick Marine also serve on other Sedgwick boards. Hvide only argues that "the entire Sedgwick Marine Board of Directors was appointed by the Chairman of Sedgwick Limited." Plaintiffs' Supplemental Memorandum of Law in Opposition to Sedgwick Marine's Motion to Dismiss, at 27. Beech Aircraft recognizes that it would be unusual for a parent not to control a subsidiary's board of directors:
Of course, the officers of a parent normally control the board of directors of a subsidiary in their capacity as representatives of the controlling shareholder. However, when the parent officers extend their control beyond that normally exercised by boards of directors, their behavior supports an inference that the subsidiary is not an independent entity.
Beech Aircraft, 751 F.2d at 121. Hvide fails to provide evidence that Sedgwick Marine's Board of Directors exercises any unusual degree of control over the subsidiary corporation, nor is there any evidence that the salaries of Sedgwick Marine officers are paid by its parent. Furthermore, the bare fact that employees of Sedgwick Marine have transferred to other Sedgwick subsidiaries does not indicate excessive dependence. See Morse Typewriter v. Samanda Office Communications, 629 F.Supp. at 1153. Hvide does not claim that corporate formalities have been ignored.
Finally, Hvide provides evidence in support of the fourth Beech Aircraft factor, "the degree of control over the marketing and operational policies of the subsidiary [Sedgwick Marine] exercised by the parent [Sedgwick Group plc]." Beech Aircraft, 751 F.2d at 122. First, Sedgwick Marine's New Business Plan urges Sedgwick Marine employees to exchange information with other Sedgwick subsidiaries before visiting clients abroad, and in its discussion of new business development, the plan recognizes Sedgwick Marine's reliance on the existing marketing contacts of other Sedgwick subsidiaries worldwide. Second, the Sedgwick Group plc Board of Directors divides up the worldwide brokerage markets among its subsidiaries, and Sedgwick Marine is not permitted to compete for business in North America or marine treaty business. In fact, Sedgwick Marine withdrew from the wholesale insurance brokerage business in North America in 1985 and at that time transferred several accounts to another sister subsidiary Price Forbes. Finally, Sedgwick Marine distributes to its employees an "Employee Benefits and Procedures Handbook" which contains descriptions of employee matters commonly established and administered by all the subsidiary corporations in the Sedgwick Group plc. Hvide offers these three pieces of evidence to prove the common marketing and operational policies of the corporate members of the Sedgwick network.
Despite one year of jurisdictional discovery, the evidence Hvide offers only indicates coordination among a network of worldwide sister subsidiaries. While close relationships among sister subsidiaries may indicate "mere department" status, the contacts here do not extend beyond those normally expected in the operation of a multinational corporation. After comparing *188 the facts in this case to other federal and New York cases which consider the mere department rule, this Court concludes that Hvide has not met its burden of showing by a preponderance of the evidence that Sedgwick Marine is not in fact operated as an independent corporate subsidiary.
Sedgwick Marine's motion to dismiss for lack of personal jurisdiction is granted.
SO ORDERED.
NOTES
[1] London Market Underwriters are defendant London & Hull Maritime Insurance Co. Ltd. and the other underwriting Lloyd's syndicates and insurance companies which subscribed through the London broker, Sedgwick Marine, to Oxy Producer Hull Policies Nos. AME 3600, 3700, 3800, 3900, and 4000 and ANE 9400 and 9500 (but not No. D707-6/81), evidenced by Certificates Nos. 14880 and 14482.
[2] Plaintiffs contend that Sedgwick Marine interfered with their ability to discover facts related to their claim for jurisdiction under the "mere department" doctrine. Plaintiffs' Supplemental Memorandum of Law in Opposition to Sedgwick Marine's Motion to Dismiss, 48-54. Their objections concern their inability to conduct discovery relating to the interrelationships among the numerous subsidiaries of Sedgwick Group plc. As later explained in this opinion, infra, that portion of this Court's holding is based on the independence of Sedgwick Marine from its parent. Plaintiffs do not provide any evidence of interference with their discovery efforts concerning Sedgwick Marine's relationship with its indirect parent Sedgwick Group plc.