Christian M. **VENDETTI**, and Beth Ann Kowalick, Plaintiffs,

v.

**FIAT AUTO S.p.A., and Fiat Auto U.S.A., Inc., Defendants.**

No. 89–CV–1187S.

United States District Court, W.D. New York.

Sept. 21, 1992.

Gross, Shuman, Brizdle & Gilfillan, P.C., Herschel Gelber, of counsel, Buffalo, N.Y. for plaintiffs.

Cleary, Gottlieb, Steen & Hamilton, Jonathan I. Blackman, of counsel, New York City, Phillips, Lytle, Hitchcock, Blaine & Huber, Joseph Ritzert, of counsel, Buffalo, N.Y., for defendants.

## ORDER

SKRETNY, District Judge.

Whereas the parties appeared before this Court for oral argument on plaintiffs' objection to the Report and Recommendation issued on September 2, 1992 by the Honorable Leslie G. Foschio, United States Mag-

istrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B),

IT HEREBY IS ORDERED, that defendants' motion to dismiss plaintiff's claim pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction is granted for the reasons stated in this Court's decision issued on the above date from the bench, which incorporated and adopted the findings, reasonings and conclusions of the Report and Recommendation.

FURTHER, that the Clerk of the Court for the Western District of New York is hereby instructed to enter final judgment in favor of defendants and against plaintiffs.

SO ORDERED.

## REPORT AND RECOMMENDATION

FOSCHIO, Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned by the Hon. William M. Skretny, on March 27, 1991, for determination of any non-dispositive motions and report and recommendation on Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2).

### BACKGROUND

This action, arising out of an automobile fire and explosion in Port Colborne, Ontario, Canada, was originally filed by Plaintiffs in New York State Supreme Court, Erie County, on July 31, 1989 asserting causes of action under the theories of strict products liability, negligence, and breach of implied warranties. The action was removed to federal court by Defendants on September 11, 1989 based on diversity. Plaintiff Vendetti is a Vermont resident; Plaintiff Kowalick is a New York resident; Defendant Fiat Auto S.p.A. is an Italian corporation; and, Defendant Fiat Auto U.S.A., Inc. is a Delaware corporation with a principal place of business in New Jersey.

On October 13, 1989, Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(4), and 12(b)(5), dismissing the action for lack of personal jurisdiction, insufficiency of process, or alternatively, under the doctrine of *forum non conveniens*, dismissal of the action in favor of suit in the Province of Ontario, Canada. Defendants, by affidavit filed January 10, 1990, withdrew their motion for dismissal of the complaint for insufficiency of process pursuant to Fed.R.Civ.P. 12(b)(4) and (5). See, Affidavit of Francesco De Salvia, Manager, Quality Assurance Department, Fiat Auto S.p.A. (undated).

Judge Curtin, the district judge originally assigned to this case, met with counsel relative to the matter on August 17, 1990 and ordered that Plaintiffs be permitted to conduct limited discovery relating to jurisdiction only prior to the argument of the instant motion. Jurisdictional discovery was to be completed by December 14, 1990. A stipulation and order concerning confidentiality of certain discovery documents and materials was entered into by counsel on December 12, 1990.

After objections were raised by Defendants to certain of Plaintiffs' discovery requests, Plaintiffs filed a motion to compel on January 22, 1991. This court issued a Memorandum and Order on April 26, 1991, granting in part and denying in part Plaintiffs' motion to compel, and extending the time for completion of jurisdictional discovery until August 1, 1991. The discovery completion date was subsequently extended until September 13, 1991. Oral argument was heard from counsel relative to the matter on November 7, 1991.

For the reasons as stated below, I recommend that Defendants' motion to dismiss for lack of personal jurisdiction be GRANTED. Alternatively, I recommend that Defendants' motion to dismiss on the ground of *forum non conveniens* be DENIED.

### FACTS

Plaintiff Vendetti purchased the used 1977 model year 124 Fiat automobile which is the subject of this lawsuit in August, 1986 from a business establishment known as Repairs–R–Us in South Fallsburg, New

York.[1] The vehicle was manufactured and assembled by Defendant Fiat Auto S.p.A. in Torino, Italy and imported into the United States by the predecessor of Defendant Fiat Auto U.S.A., Inc., Fiat Motors of North America, in 1976. As stated previously, Fiat Auto S.p.A. is an Italian corporation and Fiat Auto U.S.A., Inc. is a Delaware corporation with a principal place of business in New Jersey.

The vehicle was sold directly to a Fiat dealer in Florida, which in turn sold it to a customer located in Florida in May, 1977. The vehicle, presumably through used car ownership transfers, subsequently came into the possession of Repairs–R–Us, which sold the vehicle to Vendetti.

On September 1, 1986, Vendetti and his sister, Plaintiff Kowalick, left Buffalo, New York in the vehicle to spend the day at Sherkston Beach in Ontario, Canada. While Vendetti was operating the vehicle on Garrison Road in Port Colborne, Ontario, on the way to the beach, the vehicle caught fire and exploded, causing Plaintiffs serious personal injuries. Following the accident, Plaintiffs were transported back to Buffalo, New York where they were hospitalized and treated at the Burn Treatment Center of Sheehan Memorial Hospital. Plaintiffs were also subsequently treated by other physicians in the Buffalo area following their release from the hospital.

## DISCUSSION

The issue before this court on Defendants' motion to dismiss is whether either or both Defendants are subject to personal jurisdiction in New York. Since limited discovery on the issue of jurisdiction has been allowed by the court, Plaintiff has the burden of proving that personal jurisdiction exists by a preponderance of the evidence. *Landoil Resources v. Alexander & Alexander Services, Inc.,* 918 F.2d 1039 (2d Cir.1990). However, as no hearing or trial on the merits has been heard by the court, all pleadings and affidavits must be construed in the light most favorable to Plain-

tiff. See, *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

In a diversity case, the amenability of a defendant to personal jurisdiction is governed by state law. See, *Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 711, 102 S.Ct. 2099, 2108, 72 L.Ed.2d 492 (1982); *Cargill, Inc. v. Sabine Trading and Shipping Co.,* 756 F.2d 224, 227 (2d Cir.1985). Although Plaintiffs originally contended that personal jurisdiction over Defendants existed under either Sections 301 or 302 (long-arm jurisdiction) of the New York Civil Practice Laws and Rules ("CPLR"), at oral argument on this motion, Plaintiffs conceded that there was no basis for Section 302 jurisdiction over either Defendant in this case, and have concentrated their argument on their claim that CPLR § 301 applies. Defendants assert that they are not present in New York within the meaning of CPLR § 301, and that, therefore, they are not subject to jurisdiction in New York courts.

Section 301 permits a New York court to exercise jurisdiction over a foreign corporation on any cause of action if the defendant is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of 'presence' in this jurisdiction. *Landoil Resources, supra,* at 1043. See also, *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 115 N.E. 915 (1917) (jurisdiction may be acquired over a foreign corporation under Section 301 if it is doing business "not occasionally or casually, but with a fair measure of permanence and continuity"). In order to establish personal jurisdiction over either or both Defendants, Plaintiffs must establish that either or both Defendants have certain minimum contacts with New York such that the maintenance of this cause of action will not offend traditional notions of fair play and substantial justice so as to satisfy due process requirements. See, *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Specifically, "there must be some act by which the defendant purpose-

---

1. The facts as set forth are taken from the complaint filed in this action, along with affidavits and memoranda filed by counsel following a period of jurisdictional discovery.

fully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). See also, *Frummer v. Hilton Hotels International,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967), *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967) (where a foreign corporation receives considerable benefits from within the forum state, it may not be heard to complain about the burdens placed on it by the forum state).

The New York courts have enumerated various factors to consider when determining if a foreign corporation has minimum contacts within the state including the existence of bank accounts, employees, ownership of leases on real property, public relations and publicity work, and sales within the state. See, *Laufer v. Ostrow,* 55 N.Y.2d 305, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982); *Frummer, supra; Bryant v. Finnish National Airline,* 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965). Jurisdiction may also be acquired over a foreign corporation if a parent-subsidiary relationship is present between a New York corporation and a foreign corporation and there is either a valid agency relationship between the two companies, or the control by the parent of the subsidiary is so complete that the subsidiary is a "mere department" of the parent. See, *Saraceno v. S.C. Johnson & Son,* 83 F.R.D. 65 (S.D.N.Y.1979); *Sun First Bank v. Miller,* 77 F.R.D. 430 (S.D.N.Y.1978). Also, while not sufficient in themselves, factors such as advertising within the state, conducting litigation, planning and executing business tactics and strategy, and obtaining commercial credit arrangements may, when taken together with other relevant contacts and activities, provide a basis for establishing jurisdictional presence. See, *Hoffritz for Cutlery, Inc., supra; Katz Communication, Inc. v. Evening News Association,* 705 F.2d 20 (2d Cir.1983); *Rolls–Royce Motors v. Charles Schmitt & Co.,* 657 F.Supp. 1040 (S.D.N.Y.1987); *Cf., Andros Compania Martima, S.A. v. Intertanker Ltd.,* 714 F.Supp. 669 (S.D.N.Y.1989). The relevant time frame for a jurisdictional inquiry under N.Y. CPLR § 301 is at the time of the summons and complaint. See, *Andros Compania Martima, S.A., supra.*

### 1. Structure and Contacts of Defendants within New York

Fiat Auto S.p.A. is a wholly owned subsidiary of a giant Italian conglomerate, Fiat S.p.A., which is the parent of numerous companies collectively known as the "Fiat Group." Fiat Auto S.p.A. was incorporated in Italy in 1978 as the auto manufacturing arm of Fiat S.p.A.

Fiat Auto U.S.A., Inc. ("FAUSA") was incorporated in 1984 and is a wholly owned subsidiary of Fiat U.S.A., Inc., a New York corporation. In 1984, the corporation which had originally imported into the United States the vehicle at issue in this case, Fiat Motors of North America, was merged into Fiat U.S.A., Inc. Fiat U.S.A. is a wholly owned subsidiary of Fiat U.S.A. Holdings, Inc., which, in turn, is a wholly owned subsidiary of Internationale Holding Fiat S.A., a Swiss corporation, a wholly owned subsidiary of the parent, Fiat S.p.A.

### (A) Fiat Auto S.p.A.

Taking the assertions contained in Plaintiffs' pleadings and affidavits in the light most favorable to Plaintiffs, certain contacts between the Defendants and New York have been established. Fiat Auto S.p.A. was the actual manufacturer of the vehicle at issue in this case, which was sold to Plaintiff Vendetti in New York. Fiat Auto S.p.A. also manufactures, distributes, and sells Fiat parts throughout the United States, including New York. During 1989, the year that the complaint in this case was filed, the designated agent for Fiat Auto S.p.A., for purposes of the National Highway Safety Administration regarding compliance with safety regulations, was FAUSA. Six out of eight members of the Board of Directors of Fiat Auto S.p.A. were directors and/or executive officers of Fiat S.p.A., its corporate parent which Plaintiffs argue is present in New York. Also during 1989, a director of Fiat Auto S.p.A. was also a director of Fiat U.S.A.,

the New York corporation. Another subsidiary of Fiat Auto S.p.A., Alfa Romeo, Inc., is also a New York corporation. Alfa Romeo has fourteen New York retail dealers and had $4,359,632 in sales to the New York dealers in 1989.

Finally, a joint venture was entered into between Fiat Auto S.p.A., Alfa Lancia, Alfa Romeo, and Chrysler, establishing a New York general partnership, CSM & Co. ("CSM"), doing business as Alfa Romeo Distributors of North America, for the purpose of distribution and sale of Alfa Romeo vehicles, parts, and service in the United States, including New York. CSM has one bank account in New York. Plaintiffs contend that Alfa Romeo is a mere department of Fiat Auto S.p.A. through which Fiat Auto S.p.A. is doing business in New York for jurisdictional purposes pursuant to CPLR § 301.

(B) *Fiat Auto U.S.A., Inc.*

As to FAUSA, Plaintiffs claim numerous contacts with New York. FAUSA is the sole importer of Fiat parts in the United States, although imports of new Fiat vehicles have been discontinued. FAUSA has eight bank accounts in New York which were opened prior to 1987 and were in existence during 1989. A director, Mr. Vellano, and an officer, Mr. Pavia, of FAUSA have offices in New York, although the court notes that Mr. Pavia is an attorney in private practice whose law office is located in New York. FAUSA also has individual service agreements with eighteen New York retail dealers, and has agreements with three New York dealers for sales of Ferrari automobiles, with Ferrari North America being an unincorporated division of FAUSA another entity in the Fiat S.p.A. organization. In 1989, Fiat Auto U.S.A. sold $6,224,450 in Ferrari automobiles and $443,211 in Fiat, Lancia, and Ferrari parts in sales to New York retail dealers. Also during 1989, FAUSA shipped seventy-five Ferrari automobiles directly into New York. Engine emission systems of vehicles imported by FAUSA were tested in New York City, and a modular display stand to be used at national auto shows has been stored in Long Island, New York. Three employees of FAUSA were present at the Greater New York International Automobile Show during 1989 held in New York City and Ferrari automobiles were displayed at the show.

Additionally, FAUSA placed Yellow Page listings in New York, nationally identifying FAUSA's authorized Ferrari dealers. FAUSA also offered a co-op advertising program to its dealers, including its New York Ferrari retail dealers, which reimbursed each dealer for fifty percent of the cost of any advertisements placed by the dealer, with prior approval of FAUSA.

Intercompany loans and transfers of idle cash for investments were made on the average of five or six times per month in amounts ranging from $1 million to $10 million between FAUSA and Fiat U.S.A., the New York corporation and parent of FAUSA.

Finally, the chief financial officer of Alfa Romeo is also an officer of FAUSA, and the director and chief executive officer of Fiat U.S.A. is also a director of FAUSA.

Plaintiffs claim that the presence in New York of affiliates of the Fiat Group, coupled with these numerous contacts of Defendants in New York, is sufficient to establish, by a preponderance of the evidence, a showing of personal jurisdiction. Defendants assert that each corporation is an autonomous unit and that the individual entities that comprise the "Fiat Group" are no more than "separate corporate affiliates that have business relationships with each other," and that any contacts are insufficient to establish jurisdiction. See, Defendants' Reply Memorandum in Support of Motion to Dismiss, dated December 22, 1989, at p. 5.

### 2. *Personal Jurisdiction*

(A) *Fiat Auto S.p.A.*

Plaintiffs claim that this cause of action arose out of the systematic and regular course of business engaged in by Fiat Auto S.p.A. and FAUSA in New York which subjects Defendants to New York jurisdiction pursuant to CPLR § 301.

There is no dispute that Fiat Auto S.p.A. has no offices, bank accounts, or employees in New York. Although Plaintiffs have revealed some minor contacts between Fiat Auto S.p.A. and its parent company, Fiat S.p.A., which Plaintiffs argue establish a presence in New York as, according to Plaintiffs, Fiat S.p.A. is arguably present in New York through its New York subsidiaries, Plaintiffs mainly rely on the relationship between Fiat Auto S.p.A., Alfa Romeo, Inc. and CSM. Plaintiffs contend that Fiat Auto S.p.A. controls Alfa Romeo and CSM, each conducting substantial business in New York, such that each entity or both are mere departments of Fiat Auto S.p.A. and that, therefore, Fiat Auto S.p.A. is "doing business" in New York within the meaning of CPLR 301. In addition, Plaintiffs argue that FAUSA and CSM are agents of Fiat Auto S.p.A. in New York through which Fiat Auto S.p.A. is present and doing business in New York.

*Delagi v. Volkswagenwerk AG of Wolfsburg*, 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972), held that a German manufacturer, which was not authorized to do business in New York, could not be subject to jurisdiction in New York based on the activities of its New Jersey importer subsidiary or independent New York franchise dealers. The court stated that it had "never held a foreign corporation present [in New York] on the basis of control, unless there was in existence at least a parent-subsidiary relationship." *Delagi, supra,* 328 N.Y.S.2d at 657, 278 N.E.2d at 897. Where the manufacturer, distributor, and independent dealer are truly separate corporate entities, not commonly owned, a valid reference of agency cannot be sustained. *Delagi, supra,* 328 N.Y.S.2d at 657, 278 N.E.2d at 897.

The "doing business" test does not subject a subsidiary corporation to personal jurisdiction simply because a state has jurisdiction over the parent corporation, even if the parent is the sole shareholder of the subsidiary. *Saraceno v. S.C. Johnson and Son, Inc.,* 83 F.R.D. 65, 67 (S.D.N.Y.1979). However, a foreign subsidiary may be found to be present in New York if (1) the relationship between the foreign parent

corporation and the local subsidiary corporation gives rise to a valid inference of an agency relationship, or (2) the control by the parent of the subsidiary is so complete that the subsidiary is, in fact, merely a department of the parent. *Saraceno, supra,* at 67. Four factors guide the determination of whether personal jurisdiction exists under the "mere department" theory: (1) common ownership, (2) financial dependency of subsidiary on the parent, (3) the degree to which the parent corporation interferes with the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities, and (4) the degree of control over the marketing and operationship policies of the subsidiary exercised by the parent. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117 (2d Cir.1984); *Hvide Marine International v. Employers Insurance of Wausau,* 724 F.Supp. 180 (S.D.N.Y.1989).

Under Plaintiffs' agency theory, Plaintiffs assert that FAUSA and CSM are agents for Fiat Auto S.p.A. in New York. Plaintiffs highlight the fact that FAUSA, Fiat Auto S.p.A., and Fiat U.S.A. have at least nine common officers and directors, that FAUSA and Fiat Auto S.p.A. are mutually dependent on each other for sales and profits, that FAUSA is controlled to a significant extent by Fiat Auto S.p.A. and Fiat U.S.A., a subsidiary of Fiat S.p.A., in that over the last several years, employees of Fiat U.S.A. have also held two or three seats on the five member Board of Directors of FAUSA. Further, the Fiat Group trains high level employees in Italy and New York for direct employment by Fiat Auto S.p.A. and FAUSA in the United States, including New York. Plaintiffs also state that the partnership agreement signed between Fiat Auto S.p.A., its wholly owned subsidiaries, Alfa Lancia and Alfa Romeo, and Chrysler Motors in which a joint venture company was formed to do business as Alfa Romeo Distributors of North America for the purpose of importing and the distribution and sale of Alfa Romeo vehicles into the United States, including New York, establishes that Fiat

Auto S.p.A. exhibits a significant degree of control over Alfa Romeo, a New York corporation, and CSM, a New York general partnership.

█ Although Plaintiffs have revealed a number of contacts between Fiat Auto S.p.A. and New York, as described above, taken as a whole, these contacts do not establish an agency relationship between Fiat Auto S.p.A. and FAUSA and/or CSM. Defendants have shown that these entities conduct day-to-day business transactions in an autonomous manner. The agency relationship as set forth by Plaintiff does not satisfy the applicable test which requires that, for an agency relationship sufficient to establish jurisdiction to be present, FAUSA and/or CSM must conduct all the business which Fiat Auto S.p.A. could conduct if it were present and doing business in New York by its own officials. *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853 (1967); *Saraceno, supra,* at 68. Fiat Auto S.p.A. is a manufacturer of Fiat, Ferrari, and Alfa Romeo vehicles in Italy. CSM only imports and distributes Alfa Romeo vehicles; FAUSA imports and distributes vehicles into the United States, however, there is no evidence that FAUSA performs all functions that Fiat Auto S.p.A. could perform if it were present in New York, or had hired an actual agent to conduct its business in New York. See, *e.g., United Rope Distributors, Inc. v. Kimberly Line,* 785 F.Supp. 446, 450 (S.D.N.Y.1992) (court, in denying motion to dismiss on jurisdictional grounds based on the fact that bank account established in New York by foreign subsidiary received all income of the foreign subsidiary and was used to pay all wages of the subsidiary's employees, along with other expenses, stated that, "the ready availability of the telephone, telex, and fax makes it possible, from an office in Greece, to do all the things that a foreign corporation once needed to send an agent to New York to do"). Fiat Auto S.p.A. has no bank accounts in New York, and while, FAUSA has accounts in New York banks, there is no evidence in the record that such bank accounts are handling all the business in New York of Fiat Auto S.p.A. that Fiat Auto S.p.A. would have done if it was present in New York.

Nor do Plaintiffs establish that Alfa Romeo is a "mere department" of Fiat Auto S.p.A. or that Fiat Auto S.p.A. is a "mere department" of Fiat S.p.A. The court notes that while Plaintiffs conclude that Fiat S.p.A., as the parent company with worldwide subsidiaries is "present" and "doing business" in New York, Fiat S.p.A. is an Italian corporation with a principal place of business in Italy, and it has not been established that Fiat S.p.A. is present in New York for jurisdictional purposes. However, even assuming that Fiat S.p.A. was "doing business" in New York, following the test as set forth in *Volkswagenwerk Aktiengesellschaft, supra,* although Plaintiffs have shown common ownership, Plaintiffs have not shown, by a preponderance of the evidence, that Alfa Romeo is financially dependent on Fiat Auto S.p.A., or that Fiat Auto S.p.A. is financially dependent on Fiat S.p.A. Additionally, Plaintiffs failed to demonstrate that either Fiat Auto S.p.A.'s or Fiat S.p.A.'s Board of Directors exercise any unusual degree of control over Alfa Romeo, nor is there any evidence that salaries of one entity are paid by the other. It is not uncommon for a parent company and its subsidiaries to have common directors and/or owners. See, *Saraceno, supra,* at 70. This normal business practice cannot form the basis for personal jurisdiction, as "under New York law, a parent of a multinational corporate enterprise may make broad policy decisions for its subsidiaries ... [s]uch control is inherent in the parent-subsidiary relationship and does not justify labeling a subsidiary a 'mere department' of the parent." *Saraceno, supra,* at 71.

Finally, there is no evidence presented that any member of the Fiat Group exercises any degree of control over the marketing and operational policies of any other Fiat Group subsidiary, including, in particular, the named Defendants. As stated in *Hvide,* "the contacts here do not extend beyond those normally expected in the op-

eration of a multinational corporation." *Hvide, supra,* at 187.

A foreign manufacturer's transactions within New York through independent agents do not make the foreign corporation amenable to suit in New York. See, *H. Heller & Co. v. Novacor Chemicals, Ltd.,* 726 F.Supp. 49, 53 (S.D.N.Y.1988), *aff'd,* 875 F.2d 856 (2d Cir.1989). *Cf., Palmieri v. Estefan,* 1992 WL 108569 (S.D.N.Y.1992) (New York parent corporation held to be agent for foreign affiliates pursuant to a "matrix" agreement whereby parent obtained musical recordings and granted rights to foreign affiliates to manufacture and distribute within their territories any recording in parent corporation's repertoire). In order to hold a foreign manufacturer present in New York on the basis of control, the control over the parent manufacturer's subsidiaries must be so complete that the subsidiary is merely a department of the parent. *Delagi, supra,* 328 N.Y.S.2d at 657, 278 N.E.2d at 897. As discussed, that is certainly not case in the instant action.

Sales, no matter how substantial, of a foreign manufacturer's product in New York, through an independent agency such as an automobile dealer, do not make the foreign corporation subject to legal process in New York, even if its products are advertised in the local media. See, *McShan v. Omega Louis Brandt Et Frere, S.A.,* 536 F.2d 516 (2d Cir.1976). Therefore, no New York jurisdiction under CPLR § 301 can be established over Fiat Auto S.p.A. and the cause of action against Fiat Auto S.p.A. should be dismissed for lack of personal jurisdiction.

(B) *Fiat Auto U.S.A., Inc.*

The court also concludes that there is no basis for personal jurisdiction under CPLR § 301 over FAUSA.

Plaintiffs list a myriad of contacts between FAUSA and New York and vigorously argue that these contacts establish that FAUSA is doing substantial and systematic business in New York. However, a close examination at the asserted contacts reveals that, taken as a whole, these contacts amount to nothing more than disjunctive contacts with New York that cannot be joined together to form any basis for Plaintiffs contention that FAUSA is doing business in New York.

FAUSA's importing of vehicles into the United States for sale to independent automobile dealers cannot establish a basis for jurisdiction in New York. See, *McShan, supra; Delagi, supra.* Plaintiffs stress that FAUSA has agreements with New York retail dealers for the sale of Ferrari and Alfa Romeo vehicles in New York, along with Fiat, Lancia, Alfa Romeo, and Ferrari parts, and further enumerate the volume of sales in New York in 1989. However, sales of products within New York by such independent dealers, no matter how substantial, are insufficient to establish jurisdictional presence of a foreign corporate importer such as FAUSA. See, *Delagi, supra,* 328 N.Y.S.2d at 657, 278 N.E.2d at 898; *Merantis v. Dolphin Aviation, Inc.,* 453 F.Supp. 803 (S.D.N.Y.1978) (in granting motion to dismiss on jurisdictional grounds, court stated that New York Court of Appeals has "certainly rejected the notion that 'control' of retail sales policies by independent dealers renders the supplier jurisdictionally present within the state").

It is equally unpersuasive that jurisdiction over FAUSA exists because of the existence of eight bank accounts owned by FAUSA in New York. Bank accounts alone do not establish jurisdiction under CPLR § 301. See, *Grove Valve & Regulator Co. v. Iranian Oil Services, Ltd.,* 87 F.R.D. 93 (S.D.N.Y.1980) (maintenance of local bank accounts does not, without more, amount to "doing business" in the state). Plaintiffs have not established, as stated above, that FAUSA does substantially all of its New York business through its New York bank accounts. *Cf., United Rope Distributors, supra.*

Plaintiffs also raise the existence of common directors and officers between FAUSA and Fiat Auto S.p.A. and Fiat U.S.A., Inc., along with the travel of high level employees of Defendants into New

York for an auto show. As stated previously, the existence of common directors and officers is a normal business practice of a multi-national corporation, and absent a showing of complete control of the subsidiary by the parent, there is no justification to labeling a subsidiary a "mere department" of the parent. See, *Saraceno, supra*, at 71. Additionally, a business trip of short duration into New York by three of Defendants' employees is insufficient to establish systematic and continuous presence within the state. See, *Landoil Resources, supra*, at 1045.

■ Neither do the advertisements subsidized by FAUSA whereby FAUSA offers reimbursement to all of its independent dealers for advertisements placed by the dealers constitute a jurisdictional basis in New York. Mere solicitation of business in New York by a foreign corporation is not enough to constitute doing business for purposes of CPLR § 301. *Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 694 (1982). However, if the solicitation is substantial and continuous, and a defendant engages in other activities of substance within the state, personal jurisdiction may be properly found to exist under the "solicitation-plus" rule. See, *Landoil, supra*, at 1044. These solicitations into New York are not substantial, in fact, the advertisements are developed and placed by independent dealers who are reimbursed for fifty percent of the cost as an incentive to advertise. No direction for the solicitations is given to the dealers by FAUSA, although approval of FAUSA is needed if the dealers are to receive their reimbursement. Ferrari dealers are given advertising kits by FAUSA which provides such items as logos, however, again, there is no evidence that the actual advertising is controlled by anyone other than the independent dealer. Additionally, the analysis of the other contacts of FAUSA in New York, as discussed above, is not such that FAUSA can be found to engage in other "activities of substance" within the state to warrant the application of the "solicitation-plus" rule. See, *Landoil, supra*, at 1043.

■ Finally, intercompany loans and transfers of idle cash for investments between FAUSA and Fiat U.S.A., Inc. does not establish that Fiat U.S.A., Inc., a New York corporation, has any control over the financial operations of FAUSA, rather, such transfers constitute normal business practices between subsidiaries in a multinational entity. *Hvide, supra.* There is no basis to infer from such routine inter-corporate transactions any undue interference in the daily operations of FAUSA by Fiat U.S.A., Inc. Neither is there any basis to believe that FAUSA is financially dependent upon Fiat U.S.A., Inc. *Cf., Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 121 (2d Cir. 1984) (financial dependence of subsidiary upon parent shown where defendant provided subsidiary with seventy-one percent of its debt, including a no-interest loan and substantial accounts payable).

■ The court also notes that the storage of a modular display stand in New York which is used for various automobile exhibitions and shows is simply a portable exhibit or display, not sufficient to constitute any permanency within New York. See, *Cohen v. Vaughan Bassett Furniture Co., Inc.*, 495 F.Supp. 849, 852 (S.D.N.Y. 1980) (court noted, in dismissing action on jurisdictional grounds, that a furniture display in New York did not constitute a permanent office or location as opposed to an exhibit).

Based on the analysis above, the court concludes that there is no basis for finding personal jurisdiction in New York as against Defendants. As stated in *Landoil*, a court must "analyze a defendant's connections to the forum state 'not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York'." *Landoil, supra*, at 1043 (quoting Weinstein, Korn & Miller, New York Civil Practice, ¶ 301.16, at 3–32). Plaintiffs here have listed numerous contacts of Defendants within New York, attempting to establish that the number of contacts alone is a valid ground for maintaining jurisdiction in New York. However, a closer examina-

tion of the contacts reveals that none of the contacts, either individually or taken as a whole, establishes to any degree that either Defendant is "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction." See, *Landoil, supra,* at 1043; *Frummer, supra,* 281 N.Y.S.2d at 43, 227 N.E.2d at 853. Without such a finding of "doing business" in New York, personal jurisdiction under CPLR § 301 cannot be sustained.

Plaintiffs argue that allowing Defendants' corporate structure to lead to dismissal of this action on jurisdictional grounds is inequitable, and that Plaintiffs, badly hurt in an accident, should not lose their preferred avenue of redress for their injuries because of the corporate positioning of Defendants. Although the court's analysis of Defendants' contacts in New York leads to a seemingly harsh result, the court notes that Plaintiffs could have brought this action in New Jersey, Delaware, Italy, or Ontario [2] where there would not appear to have been any barriers to personal jurisdiction over at least one or possibly both Defendants.[3] In fact, Defendants offered at the outset to litigate this matter in Ontario, waiving any jurisdictional and/or statute of limitations objections, but were turned down by Plaintiffs. Had such a jurisdictionally proper forum been initially selected, it is possible that a *forum non conveniens* motion brought by Plaintiffs could have resulted in the case being tried in this locale, if Defendants consented to New York jurisdiction. See, *Gulf Oil v. Gilbert,* 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947) (doctrine of *forum non conveniens* presupposes at least two forums in which the defendant is amenable to process, either by being subject to process or consenting to process in the foreign forum). It is unfortunate that Plaintiffs chose to rely exclusively on the New York forum, but, in cases of this kind, the jurisdictional law in New York is well settled, and there is no basis on which to find that either Defendant is doing business in this jurisdiction. As a diversity court, we must respect New York jurisdictional principles, and there is no reason, on this record, to conclude that New York courts would hold otherwise.

◼ As to Defendants' motion for dismissal based on the doctrine of *forum non conveniens,* based on my recommendation in this case, this motion should be moot. However, the court notes that, even if the motion was not moot, it would not recommend dismissal of this lawsuit on the ground of *forum non conveniens* in favor of litigating this action in Ontario.

A district court has broad discretion in deciding whether to dismiss an action on the grounds of *forum non conveniens.* See, *Piper Aircraft v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981); *R. Maganlal & Co. v. M.G. Chemi-*

**2.** Defendants, in their motion papers and at oral argument, agreed to waive any jurisdictional objections and statute of limitations defenses if this suit were transferred to an Ontario forum. Even if Defendants had not consented to submit to jurisdiction in Ontario, it appears that Ontario has a long-arm statute which would have provided for personal jurisdiction over all parties in this action based on the location of the automobile fire. Ontario Rules of Civil Procedure § 17.02(g), R.O. 560/84. See, *Perry v. Scott,* 1992 Ont.C.J.LEXIS 121 (1992) (Ontario court denied motion to transfer jurisdiction over tort action resulting from accident in Ontario between New York plaintiff and Michigan defendant to United States). In addition, the court notes that the statute of limitations for "recovery of damages occasioned by a motor vehicle" is two years, (see, § 180 Highway Traffic Act, R.S.O. (1980)), but that the statute of limitations for general torts in Ontario is six years. See, § 45(g) Limitations Act, R.S.O. (1980).

**3.** It is also possible that Ontario courts would have applied New York substantive law to the action had jurisdiction been obtained in Ontario. See, *McLean v. Pettigrew,* [1945], S.C.R. 62 (Quebec law applied to automobile negligence action between Quebec residents where accident occurred fortuitously in Ontario); *Prefontaine v. Frizzle,* (1990), 71 O.R.2d 385 (Ont.C.A.) (Ontario court applied Quebec law to action between Quebec resident and Ontario resident for damages resulting from accident which occurred in Quebec); *Grimes v. Cloutier,* (1989), 69 O.R.2d 641 (Ont.C.A.) (party expectations and significant relationship required application of Quebec no-fault law barring recovery by Ontario resident plaintiff against Quebec resident defendant following accident in Quebec).

*cal Company, Inc.,* 942 F.2d 164 (2d Cir. 1991). To prevail on a motion to dismiss based on *forum non conveniens,* a defendant must demonstrate that an adequate alternative forum exists and that, considering relevant private and public interest factors, the balance of convenience tilts in favor of a trial in a foreign forum. See, *Gilbert, supra,* 330 U.S. at 508–09, 67 S.Ct. at 843 (1947). Ordinarily a strong presumption exists in favor of the plaintiff's choice of forum unless relevant private and public interest factors weigh heavily in favor of a trial in the alternative forum. See, *Piper Aircraft, supra,* 454 U.S. at 255, 102 S.Ct. at 265; *R. Maganlal, supra,* at 167–68. Private interest factors include "the ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert, supra,* 330 U.S. at 508, 67 S.Ct. at 843. Public interest factors include "administrative difficulties stemming from court congestion; the interest in having 'localized controversies decided at home'; and the interest in having issues of foreign law decided by a foreign tribunal." *Gilbert, supra,* at 508–09, 67 S.Ct. at 843.

In this case, the accident took place fortuitously in Ontario, Canada. Neither plaintiff is a resident of Canada. Additionally, Plaintiffs represent that in Ontario there is no cause of action for strict products liability, and there is a $180,000 limit on non-pecuniary damages. Following the accident, Plaintiffs were transported back into New York where they were hospitalized in Buffalo, New York area hospitals and treated by Buffalo doctors. The vehicle at issue in this case was brought back to Buffalo and remains in storage. Defendants argue that the investigating officer's report, the fire report, and the report by towing personnel is in Ontario and not subject to process. Further, Defendants argue that Ontario law should apply to this action as, unless extraordinary circumstances exist, the law of the place of the tort is the general rule in New York, (see, *e.g., Schultz v. Boy Scouts of America,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 95, 480 N.E.2d 679, 684 (N.Y.1985)), and therefore, an Ontario court is better suited to apply Ontario law.

This court concludes that Defendants have not shown that the balance of convenience sufficiently favors trial in the Ontario forum to overcome the presumption in favor of Plaintiff's choice of forum. The need to apply foreign law is not alone sufficient to dismiss under the doctrine of *forum non conveniens.* See, *R. Maganlal, supra,* at 169. The other arguments of counsel, *i.e.,* that certain documents exist which are not subject to process in Ontario, cannot overcome the fact that many of the witnesses to be called in this litigation reside in New York, Plaintiffs' full course of medical treatment took place in New York, the vehicle is stored in New York, and Plaintiff Kowalick resides in New York. Further, Plaintiffs represented at oral argument that they were in possession of the documents which Defendants state that they are unable to obtain and Plaintiffs volunteered to forward these documents to Defendants upon request. These factors cause the court to conclude that Defendants would not be successful on a motion to dismiss on the ground of *forum non conveniens.*

The fact that the court would recommend denial of Defendants' *forum non conveniens* motion in no way undercuts its conclusions as to the lack of personal jurisdiction over Defendants discussed above as the considerations of convenience and choice of law are irrelevant to the question of personal jurisdiction. See, *Hanson v. Denckla, supra,* 357 U.S. at 254, 78 S.Ct. at 1240 ("[a state] does not acquire [personal] jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation ... the issue is personal jurisdiction, not choice of law"); *Saraceno, supra,* at 72 ("while we recognize that a New York plaintiff has a strong interest in bringing suit in this [New York] forum, we must balance this interest against defendant's right to be free of the expense and annoyance of protracted dis-

covery if, in fact, it is not subject to this court's jurisdiction").

## CONCLUSION

Based on the above discussion, I recommend that Defendant Fiat Auto S.p.A. and FAUSA's motion to dismiss for lack of personal jurisdiction be GRANTED. Defendants' alternative motion for dismissal on the ground of *forum non conveniens,* based on my recommendation, is therefore moot. However, if Judge Skretny should, upon *de novo* review, conclude otherwise than as recommended on the question of jurisdiction, it is further recommended that Defendants' motion of dismissal on *forum non conveniens* grounds be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 30(a).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the counsel for Plaintiffs and Defendants.

SO ORDERED.